IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| THE COLLEGE NETWORK, INC. | § | |
| | § | JANUARY 13, 2009 |
| Plaintiff-Counterdefendant | § | |
| and Defendant in Intervention; | § | |
| | § | |
| v. | § | CIVIL ACTION NO. A-07-CA-615-LY |
| | § | |
| MOORE EDUCATIONAL | § | |
| PUBLISHERS, INC. dba | § | |
| iSTUDYSMART | § | |
| | § | |
| Defendant-Counterplaintiff; | § | |
| | § | |
| and | § | |
| | § | |
| DEBRA MOORE, | § | |
| | § | |
| Plaintiff in Intervention. | § | |

**JOINT PROPOSED JURY CHARGE FOR
THE CLAIMS OF THE COLLEGE NETWORK, INC.**

Comes now Plaintiff-Counterdefendant The College Network, Inc. ("TCN") and submits the parties' joint proposed jury instructions and issues with respect to the claims of TCN.  All instructions and issues are agreed to excepts as noted below with respect to Instructions 5 and 9 and Question No. 2.

**AGREED PROPOSED INSTRUCTION NO. 1**

In this charge, I will be referring to several matters, which I will now define for you:

1.    TCN means The College Network, Inc.

2.    MEP means Moore Educational Publishers, Inc.

3.    Moore means Debra Moore.

## AGREED PROPOSED INSTRUCTION NO. 2

TCN contends that MEP has engaged in unfair competition by using TCN's trademarks and trade name in MEP's internet advertising.  Specifically, TCN contends that it is the owner of the trademarks and trade names "The College Network" and "College Network" and that MEP has wrongfully used TCN's trademarks and trade names to attract customers to MEP's websites by purchasing "The College Network" and "College Network" and variations on these names from Internet search engines like Google and Yahoo! so that, when a prospective customer searches for one of them, a paid link to MEP's website appears, which diverts, or tends to divert, consumer's interest to MEP's website.

## **AGREED PROPOSED INSTRUCTION NO. 3**

A trademark is any word, name, symbol, or device, or any combination thereof used by a company to identify and distinguish its goods from the goods of others, and to indicate the source of the goods, even if that source is unknown.

Any person who uses the trademark of another may be liable for damages.

**AGREED PROPOSED INSTRUCTION NO. 4**

A trade name is any word or words, a symbol, or combination of words and symbol, used by a person to idenfity that person's business and to distinguish it from the business of others.  A trade name symbolizes the reputation of a person's business as a whole.  By comparison, a trademark identifies a person's goods.

If a person owns a trade name, then that person has the exclusive right to use the name or to control the use of confusingly similar variatons of the name by others in the market.

Any person who uses the trade name of another may be liable for damages.

**TCN'S PROPOSED INSTRUCTION NO. 5**

(Bold face language is language TCN wishes to include but has not been agreed to by MEP).

On TCN's claim for unfair competition by infringement of its trademarks and trade names, TCN has the burden of proving each of the following elements by a preponderance of the evidence:

1. Ownership of "The College Network" and/or "College Network" as a valid, protectible trademark or trade name or both.

2. MEP's use of a mark or name similar to "The College Network" and/or "College Network" without the consent of TCN in a manner that is likely to **cause "initial interest confusion" for ordinary consumers, as that term is defined by instruction No. 9 below, or that is likely to** cause confusion among ordinary consumers as to the source of the goods.

If you find that each of the elements on which TCN has the burden of proof has been proved, your verdict should be for TCN. If, on the other hand, TCN has failed to prove any of these elements, your verdict should be for MEP.

GIVEN: _____
REFUSED: _____
MODIFIED: _____


_____
UNITED STATES DISTRICT JUDGE


**SOURCE:** Ninth Circuit Pattern Jury Charge § 15.5; 15 U.S.C. § 1125(a); *Board of Supervisors for Louisiana State University Agricultural & Mechanical College v. Smack Apparel Co.*, ___ F.3d ___, Nos. 07-30580, 07-30887, 2008 WL 4981326 (5th Cir. Nov. 25, 2008); *McNeil Nutritionals, LLC v. Heartland Sweeteners*, 511 F.3d 350, 358 (3d Cir. 2007); *Audi AG v. D'Amato*, 469 F.3d 534, 546 (7th Cir. 2006); *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663-64 (5th Cir. 2000); *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 638 (7th Cir. 1999); *Componentone L.L.C., v.*

*Componentart, Inc.*, No. 02:05cv1122, 2008 WL 4790661, at *7 (W.D. Pa. Oct. 27, 2008)**.**

## MEP'S PROPOSED INSTRUCTION NO. 5

On TCN's claim for unfair competition by infringement of its trademarks and trade names, TCN has the burden of proving each of the following elements by a preponderance of the evidence:

1. Ownership of "The College Network" and/or "College Network" as a valid, protectible trademark or trade name or both.

2. MEP's use of a mark or name similar to "The College Network" and/or "College Network" without the consent of TCN in a manner that is likely to cause confusion among ordinary consumers as to the source of the goods.

If you find that each of the elements on which TCN has the burden of proof has been proved, your verdict should be for TCN. If, on the other hand, TCN has failed to prove any of these elements, your verdict should be for MEP.

GIVEN:        _____
REFUSED:      _____
MODIFIED:     _____


_____
UNITED STATES DISTRICT JUDGE


**SOURCE:** Ninth Circuit Pattern Jury Charge § 15.5.

## **AGREED PROPOSED INSTRUCTION NO. 6**

Instruction No. 5 requires TCN to prove by a preponderance of the evidence that "The College Network" and/or "College Network" is valid.

A valid trademark or trade name is a word, symbol, or device that is either: (1) inherently distinctive or (2) descriptive, but has acquired a secondary meaning.

Only a valid trademark or trade name can be infringed. Only if you determine TCN proved by a preponderance of the evidence that the "The College Network" and/or "College Network" is a valid trademark or trade name should you consider whether TCN owns it or whether MEP's actions infringed it.

Only if you determine that "The College Network" and/or "College Network" is not inherently distinctive should you consider whether it is descriptive but became distinctive through the development of secondary meaning.

An inherently distinctive trademark or trade name is a word, symbol or device, or combination of them, which intrinsically identifies a particular source of a good in the market, in the case of a trademark, or a particular business, in the case of a trade name. The law assumes that an inherently distinctive trademark is one that almost automatically tells a consumer that it refers to a brand or a source for a product, and that consumers will be predisposed to equate the trademark with the source of a product. Likewise, an inherently distinctive trade name is one that almost automatically tells a consumer that it refers to a specific business.

Trademarks and trade names are classified into the following categories: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful.

A trademark or trade dress is "inherently distinctive" if it is classified into one of the last three categories – suggestive, arbitrary, or fanciful. Thus, if a trademark or

trade name is classified into one of these three categories, it is protectible, and nothing else is required to show that it is protectible, because its intrinsic nature serves to identify a particular source of a product.

Arbitrary and fanciful marks or trade names bear no relationship to the product or services to which they are applied.  A suggestive mark or trade name suggests, rather than describes, some particular characteristic of the goods to which it applies and requires the consumer to exercise the imagination in order to draw a conclusion as to the nature of the goods and services.

For instance, the common word "apple" became a strong and inherently distinctive trademark when used by a company to identify the personal computers that the company sold.  The company's use of the word "apple" was arbitrary or fanciful because "apple" did not describe and was not related to what the computer was, its components, ingredients, quality or characteristics.   "Apple" was being used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.

A suggestive use of a word involves consumers associating the qualities the word suggests to the product or service to which the word is attached.  For example, when "apple" is used not to indicate a certain company's computers, but rather "Apple-A-Day" vitamins, it is being used as a suggestive trademark.  "Apple" does not describe what the vitamins are.  However, consumers may come to associate the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" Vitamins.

By contrast, a mark or trade name is descriptive if it identifies a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients. A descriptive mark or trade name is protectible only when it has acquired secondary meaning in the minds of the consuming public. A generic mark or trade dress is never protectible because it connotes a particular genus or class of which an individual product is but a member, rather than the more individualized characteristics of a particular product.

Finally, if a mark or name merely answers the question "what is the product being sold?" it is generic. Generic trademarks give the general name of the product. They are part of our common language which we need to identify all such similar products. They are the common name for the product to which they are affixed. If the average consumer would identify the term with all such similar products, regardless of the seller, the term is generic and not entitled to protection as a trademark. Clearly, the word apple can be used in a generic way and not be entitled to any trademark protection when it is used to identify the fleshy, red fruit from an apple tree.

### Mark Distinctiveness and Validity

If you decide that "The College Network" and/or "College Network" is arbitrary or suggestive, it is considered to be inherently distinctive. An inherently distinctive trademark is valid and protectable.

On the other hand, if you determine that "The College Network" and/or "College Network" is generic, it cannot be distinctive and therefore is not valid nor protectable. You must render a verdict for MEP on the charge of infringement in Instruction No. 5.

If you decide that "The College Network" and/or "College Network" is descriptive, you will not know if the trademark is valid or invalid until you consider if it has gained distinctiveness by the acquisition of secondary meaning, which I explain in Instruction No. 7.

**AGREED PROPOSED INSTRUCTION NO. 7**

Only if you determine that "The College Network" or "College Network" is not inherently distinctive should you consider whether it is descriptive but became distinctive through the development of secondary meaning.

Secondary meaning is established for a trademark or trade name if the mark or name has come through use to be uniquely associated with a specific source. That a particular mark or trade name has acquired secondary meaning can be proven by a consideration of the evidence, including but not limited to the following:

(1) Purchaser Perception:  Whether people who purchase TCN's products associate TCN's trademark or trade name or both with TCN;

(2) Advertisement by the owner:  The amount and manner of advertising by TCN using its trademarks or trade names or both;

(3) Demonstrated Utility:  Whether TCN used its trademarks or trade name or both to increase its sales;

(4) Extent of Use:  The length of time and manner in which TCN used its trademarks or trade names or both.

(5) Copying:  Whether MEP intentionally copied or used TCN's trademarks or trade names or both.

(6) Intent:  Whether MEP used TCN's trademarks or trade names or both in a manner calculated to capture initial consumer attention.

Descriptive marks are protectable only to the extent you find they acquired distinctiveness through secondary meaning. Descriptive marks are entitled to protection only as broad as the secondary meaning they have acquired, if any. If they have acquired no secondary meaning, they are entitled to no protection and cannot be considered a valid mark.

TCN has the burden of proving that "The College Network" and/or "College Network" has acquired a secondary meaning.

The mere fact that TCN is using "The College Network" and/or "College Network, or that TCN began using it before MEP, does not mean that the trademark has acquired secondary meaning. There is no particular length of time that a trademark must be used before it acquires a secondary meaning.

## AGREED PROPOSED INSTRUCTION NO. 8

The law entitles the owner of a trademark or a trade name to exlude others from using that mark and that name.

A person acquires the right to exclude others from using a trade mark or a trade name by being the first to use it in the marketplace.

If you find "The College Network" or "College Network" or both to be inherently distinctive, you must consider whether TCN used them before MEP began to use them for Internet advertising.  If you find that TCN has not shown that MEP used a trademark or trade name found by you to be inherently distinctive before MEP began using it or them in its Internet advertising, then you cannot conclude that TCN is the owner of any such trademark or trade name.

If you find that "The College Network" or "College Network" or both are not inherently distinctive, but that TCN has shown that one or both are descriptive and have acquired secondary meaning, then you must consider whether any such trademark or trade name acquired secondary meaning before MEP began using it or them in its Internet advertising.   If you find that TCN has not shown that MEP used such a trademark or trade name before it acquired secondary meaning, then you cannot conclude that TCN is the owner of any such trademark or trade name.

**TCN'S PROPOSED INSTRUCTION NO. 9**

(Bold face language indicates language that has not been agreed upon).

If you determine that TCN owns "The College Network" and/or "College Network" and that one or both are valid, protectible trademarks or trade names or both, then, for each that you have determined to be a valid, protectible trademark or trade name or both owned by TCN, you must consider whether MEP used it without the consent of TCN in a manner that is likely to cause confusion among ordinary consumers.

**In a case like this one in which TCN alleges that MEP wrongfully used its trademarks and trade names in Internet advertising, a likelihood of confusion may exist if there is what is known as "initial interest confusion," which occurs when a competitor uses a trademark or trade name of another, like TCN, in a manner calculated to capture initial consumer attention.  Once the consumer's attention is captured, the consumer may realize  that he or she has arrived at the competitor's website, and not the website of the owner of the trademark or trade name, but yet might stay there and purchase the competitor's products.  If you find that initial interest confusion existed, then you must find that there is a likelihood confusion.**

**In addition, there may also exist "point of sale" likelihood of confusion, where there is a likelihood of confusion about the source of a product, even if there is no actual confusion.**

**In addition, in considering whether there is a likelihood of confusion about the source of a product, you may consider the following factors.**

(1)     The similarity between TCN's trademark(s) and/or trade name(s) and the marks and or names used by MEP about which TCN complains;

(2)     The similarity of TCN's and MEP's products. The greater the similarity of products, the greater the likelihood of confusion.

(3)     The marketing channels used.   The greater the overlap in the advertising methods employed by TCN and MEP, the greater the likelihood of confusion.

(4)     MEP's Intent.  Knowing use by MEP of the TCN's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of TCN's mark, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that MEP acted knowingly, the use of TCN's trademark to identify similar goods may indicate a likelihood of confusion.

(5)     The strength of the mark or name.  The stronger the mark or name, the greater the protection it receives because the greater the likelihood that consumers will confuse MEP's use with TCN's.  In determining the strength of the mark, you should look to such factors as length of time in which the mark or name have been in the marketplace and the extent to which they have been advertised or used.

(6)     Any actual confusion that occurred.

(7)     **The degree of care employed by consumers.  The lesser the degree of care employed by consumers in the purchase of goods to which the trademark is affixed or for which the trade name is used, the more this factor weighs in favor of a finding of likelihood of confusion**.

Proof of actual confusion about the source of a product is not a prerequisite to a finding of likelihood of confusion about the source of a product.  No single factor is dispositive, and a finding of a likelihood of confusion about the source of a product does not require a positive finding on a majority of these factors.  You may also consider any

other factors you find to be relevant to whether there is a likelihood of confusion about the source of a product.

GIVEN:      _____
REFUSED:   _____
MODIFIED:  _____


_____
UNITED STATES DISTRICT JUDGE


**SOURCE:**  Ninth Circuit Pattern Jury Charge § 15.16; 15 U.S.C. §§ 1114(1), 1125(a); *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC,* 511 F.3d 350, 358 (3d Cir. 2007); *Audi AG v. D'Amato,* 469 F.3d 534, 546 (7th Cir. 2006); *Australian Gold, Inc. v. Hatfield,* 436 F.3d 1228, 1239-40 (10th Cir. 2006); *Westchester Media v. PRL USA Holdings, Inc.,* 214 F.3d 658, 664 (5th Cir. 2000); *Elvis Presley Enters., Inc. v. Capece,* 141 F.3d 188, 194, 202, 204 (5th Cir. 1998); *Moore Business Forms, Inc. v. Ryu,* 960 F.2d 486, 490 (5th Cir. 1992); *Sunbeam Prods., Inc. v. West Bend Co.,* 123 F.3d 246, 257-58 (5th Cir. 1997), *abrogated on other grounds by TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23 (2001); *Fuji Photo Film Co. Inc. v. Shinohara Shoji Kabushiki Kaisha,* 754 F.2d 591, 595-596. (5th Cir. 1985); *Componentone L.L.C., v. Componentart, Inc.,* No. 02:05cv1122, 2008 WL 4790661, at *7 (W.D. Pa. Oct. 27, 2008); *Soilworks, LLC v. Midwest Indus. Supply, Inc.,* No. CV-06-2141-PHX-DGC, 2008 WL 3286975 (D. Ariz. Aug. 7, 2008); *Kinetic Concepts, Inc. v. Bluesky Med. Group Inc.,* No. SA-03-CA-0832-RF, 2005 WL 3068223 (W.D. Tex. Nov. 1, 2005); *Interstate Battery Sys., Inc. of Am. v. Wright,* 811 F. Supp. 237, 242 (N.D. Tex. 1993).

**MEP'S PROPOSED INSTRUCTION NO. 9**

(Bold face language indicates language that has not been agreed upon).

If you determine that TCN owns "The College Network" and/or "College Network" and that one or both are valid, protectible trademarks or trade names or both, then, for each that you have determined to be a valid, protectible trademark or trade name or both owned by TCN, you must consider whether MEP used it without the consent of TCN in a manner that is likely to cause confusion among ordinary consumers.

**Likelihood of confusion may exist where there is actual confusion about the source of product and where there is a likelihood of confusion about the source of a product, even if there is no actual confusion. In addition, in a case like this one in which TCN alleges that MEP wrongfully used its trademarks and trade names in Internet advertising, a likelihood of confusion may exist if there is what is known as "initial interest confusion," which occurs when a competitor uses a trademark or trade name of another, like TCN, in a manner calculated to capture initial consumer attention. Once the consumer's attention is captured, the consumer may realize that he or she has arrived at the competitor's website, and not the website of the owner of the trademark or trade name, but yet might stay there and purchase the competitor's products.**

In considering whether there is a likelihood of confusion, you may consider the following factors.

(8)     The similarity between TCN's trademark(s) and/or trade name(s) and the marks and or names used by MEP about which TCN complains;

(9)     The similarity of TCN's and MEP's products. The greater the similarity of products, the greater the likelihood of confusion.

(10)     The marketing channels used.   The greater the overlap in the advertising methods employed by TCN and MEP, the greater the likelihood of confusion.

(11)     MEP's Intent.  Knowing use by MEP of the TCN's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of TCN's mark, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that MEP acted knowingly, the use of TCN's trademark to identify similar goods may indicate a likelihood of confusion.

(12)     The strength of the mark or name.  The stronger the mark or name, the greater the protection it receives because the greater the likelihood that consumers will confuse MEP's use with TCN's.  In determining the strength of the mark, you should look to such factors as length of time in which the mark or name have been in the marketplace and the extent to which they have been advertised or used.

(13)     Any actual confusion that occurred.

(14)     **The degree of care employed by consumers.   The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in the plaintiff's and defendant's trademarks**.

Proof of actual confusion is not a prerequisite to a finding of likelihood of confusion.  No single factor is dispositive, and a finding of a likelihood of confusion does not require a positive finding on a majority of these factors.  You may also consider any other factors you find to be relevant to whether there is a likelihood of confusion.

GIVEN:     _____
REFUSED:   _____

MODIFIED:  _____

_____
UNITED STATES DISTRICT JUDGE

**SOURCE:** Ninth Circuit Pattern Jury Charge § 15.16.

## AGREED PROPOSED QUESTION 1

## QUESTION NO. 1

Do you find from a preponderance of the evidence that MEP infringed any of the following trademarks and/or trade names of TCN?

Answer "Yes" or "No" as to each:

"The College Network"              _____

"College Network"                  _____

## PROPOSED QUESTION 2

If your answer to Question No. 1 is "Yes," then answer the following question. Otherwise, go to Question No. 4.

## QUESTION NO. 2:

TCN has the burden of proving actual damages by a preponderance of the evidence.  [MEP wishes to add the following:  "**Damages means the amount of money which will reasonably and fairly compensate TCN for any injury you find was caused by MEP's infringement of TCN's trademark."**  TCN believes this language is duplicative of the paragraph that immediately follows].

What amount of money, if paid now in cash, would fairly compensate TCN for any injury and/or damages caused by MEP's infringement of TCN's trademark(s) and/or trade name(s).

You may consider the following elements:

1.  The injury to or loss of TCN's reputation;

2.  The injury to or loss of TCN's goodwill, including injury or damage to TCN's general business reputation;

3.  The lost profits that TCN would have earned but for MEP's infringement;

4.  The expense of preventing customers from being deceived;

5.  The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement; and

6.  any other factors you find that bear on TCN's actual damages.

When considering prospective costs (e.g., the cost of future advertising, expense of preventing customers form being deceived), you must not overcompensate. Accordingly, your award of such future costs should not exceed the actual damage to the value of TCN's mark or name at the time of the infringement by MEP.

Answer in dollars and cents, if any: $_____.

GIVEN:        _____
REFUSED:      _____
MODIFIED:     _____

_____
UNITED STATES DISTRICT JUDGE

**SOURCE:**  9th Cir. Pattern Jury Charge § 15.25; 15 U.S.C. § 1117.

## **AGREED PROPOSED QUESTION 3**

## **QUESTION NO. 3:**

What sum of money do you find represents the amount of profits gained by MEP

as a result of the infringement found by you?

**Instruction**:  In assessing profits, TCN is required only to prove MEP's sales. MEP must prove all elements of any cost or deduction claimed.

Answer in dollars and cents, if any:

Answer: $_____

RESPECTFULLY SUBMITTED,

JACKSON WALKER L.L.P.

By:   /s/ Matt Dow
─────────────────────────────────
MATT DOW

STATE BAR NO. 06066500

MARK L. WALTERS

STATE BAR NO. 00788611

JACKSON WALKER L.L.P.
100 CONGRESS AVENUE
SUITE 1100
AUSTIN, TX 78701

TELEPHONE: (512) 236-2000
FACSIMILE: (512) 391-2113

*Attorneys for The College Network, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that on this 13th day of January 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the party listed below:

Cindy Olson Bourland
Merica & Bourland, P.C.
400 West 15th Street, Suite 900
Austin, Texas 78701

*/s/ Matt Dow*
MATT DOW

5407124v.3