IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**

JAN 2 0 2009

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| THE COLLEGE NETWORK, INC., | § | |
| PLAINTIFF- | § | |
| COUNTERDEFENDANT, | § | |
| | § | |
| V. | § | CAUSE NO. A-07-CA-615-LY |
| | § | |
| MOORE EDUCATIONAL | § | |
| PUBLISHERS, INC. D/B/A | § | |
| ISTUDYSMART AND | § | |
| DEBRA MOORE, | § | |
| DEFENDANTS- | § | |
| COUNTERPLAINTIFFS. | § | |

## JURY CHARGE

### I. GENERAL INSTRUCTIONS FOR THE JURY

**MEMBERS OF THE JURY:**

You have heard the evidence in this case and in a moment you will hear the arguments of counsel for the parties, but first, I will instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

You will be given questions to answer concerning the issues in this case. Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You will be given questions to answer concerning the issues in this case. Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

## A. CONSIDERATION OF THE EVIDENCE

You must consider only the evidence in this case. However, you may draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. You may make deductions and reach conclusions that reason and common sense lead you to make from the testimony and evidence.

There are two types of evidence you may consider. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of circumstances that tend to prove or disprove the existence or nonexistence of certain other facts. The law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

In determining whether any fact has been proved in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses who testified in this case. You should decide whether you believe what each person had to say and how important that testimony was. In making that decision, and in determining the weight to give to the testimony of a witness, I suggest you ask yourself a few questions: Did the person impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the

witness have any relationship with any party to the case? Did the witness have a good memory? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? These are a few considerations that may help you determine the accuracy of what each witness said.

## B. EVIDENCE IN THE CASE

If a lawyer asked a witness a question that contained an assertion of fact, you may not consider the lawyer's assertion as evidence of that fact. The lawyers' statements are not evidence. When, however, the lawyers on both sides stipulate or agree as to the existence of a fact, the jury must, unless otherwise instructed, accept the stipulation and regard the fact as proved.

Unless you are otherwise instructed, the evidence in this case always consists of the sworn testimony of the witnesses, regardless of who may have called them; and all exhibits received in evidence, regardless of who may have produced them; and all facts which may have been admitted or stipulated.

Any evidence as to which an objection was sustained by the Court, any evidence ordered stricken by the Court, and any testimony, exhibit, or conduct that the Court has instructed you to disregard must not be considered by you and must not be used for any purpose in reaching your verdict.

## C. CORPORATE PARTY INVOLVED

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

## D. CORPORATE EMPLOYEE ACTS

A corporation can act only through persons who are its agents or employees.  In general, a

corporation is responsible under the law for any of the acts and statements of its employees or agents

that are made within the scope of their duties as duties as employess or agents or the corporation.

## E. ALL AVAILABLE EVIDENCE NEED NOT BE PRODUCED

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case or who may appear to have some knowledge of the matters in issue at this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

## F. EVIDENCE FOR A LIMITED PURPOSE

During the course of this trial I may have instructed you that I admitted certain evidence for a limited purpose or that you may consider some testimony as evidence against one party but not against another, or for a certain purpose and not for others.  You may consider such evidence only for the specific limited purposes for which it was admitted.

## G. IMPEACHMENT BY WITNESSES' INCONSISTENT STATEMENTS

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something or failed to say or do something, that was different from the testimony the witness gave at this trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

## H. USE OF NOTES TAKEN BY JURORS

Any notes that you have taken during this trial are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

## I. BURDEN OF PROOF

In this case, the Plaintiff The College Network, and the Counterplaintiff Moore Educational Publishers, Inc. and Debra Moore, unless I specifically instruct you to apply a different standard, must prove every essential part of its claims by a "preponderance of the evidence." The preponderance-of-the-evidence standard means that a party has to produce evidence that, when considered in light of all of the facts, leads you to believe that what that party alleges is more likely true than not. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely true than not true. It is simply, the greater weight of the credible evidence.

In determining whether any fact has been proved by a preponderance of the evidence in this case, unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You are instructed that under the law, "clear and convincing evidence" is evidence that produces in your mind a firm belief or conviction of the truth of the allegations sought to be established. This involves a greater degree of persuasion than is necessary to meet the preponderance-of-the-evidence standard; however, proof to an absolute certainty is not required.

In determining whether any fact has been proved by clear and convincing evidence in this case, unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of The College Network's claims by the standard set forth in the question your are answering, you should find for Moore Educational Publishers, Inc. and Debra K. Moore as to that claim. Additionally, if the proof fails to establish any essential part of Moore Educational Publishers, Inc. and Debra K. Moore's claims by the standard set forth in the question your are answering, you should find for The College Network as to that claim.

## J. DEPOSITION TESTIMONY

The testimony of a witness who, for some reason, cannot be present to testify from the witness stand may be presented under oath, in the form of a deposition. A deposition is the sworn, recorded answers to questions asked of a witness in advance of the trial. During the trial of this case, certain deposition testimony has been presented to you by reading of the deposition testimony or playing a videotape. Such testimony is entitled to the same consideration, and is to be judged as to credibility, and weighed, and otherwise considered by you insofar as possible, in the same way as if the witness had been present and had testified from the witness stand in court.

## II.  SPECIFIC INSTRUCTIONS

### A. DEFINITIONS

In these instructions and in the accompanying Verdict Form, the following terms listed below shall be defined as follows:

1. "TCN" means the The College Network, Inc.

2. "MEP" means Moore Educational Publishers, Inc., doing business as iStudySmart.

3. "Moore" means Debra K. Moore.

## B. CLAIMS OF THE PARTIES

### 1. TCN'S CLAIMS

TCN contends that MEP engaged in unfair competition by using TCN's trademarks and trade names in MEP's internet advertising. Specifically, TCN contends that it is the owner of the trademarks and trade names "The College Network" and "College Network" and that MEP has wrongfully used TCN's trademarks and trade names to attract customers to MEP's websites by purchasing "The College Network" and "College Network" and variations on these names from Internet search engines like Google and Yahoo! so that, when a prospective customer searches for one of them, a paid link to MEP's website appears, which diverts, or tends to divert, consumer's interest to MEP's website.

### 2. MEP AND MOORE'S CLAIMS

MEP and Moore contend that TCN falsely accused Moore of being a "thief," thereby defaming her. MEP and Moore contend that TCN falsely stated that Ms. Moore has "stolen from The College Network" and is "dishonest," thereby defaming her. MEP claims that it was disparaged as a business because TCN falsely stated that MEP or iStudySmart had "gone out of business" or words to that effect, and because of the false statements relating to Ms. Moore, who is the sole owner of MEP. MEP and Moore assert that TCN made the false statements knowingly and with malice.

With respect to TCN's claims for unfair competition, MEP asserts that it used the name "The College Network" in its internet advertising because it found out that TCN was using "iStudySmart" in TCN's internet advertising. MEP asserts that TCN is suing for the very same behavior that TCN engages in. MEP further asserts that this type of advertising complies with the policies of Google

16

and Yahoo.   MEP also contends that this type of internet advertising is commonly used by businesses.  MEP also contends that TCN has suffered no damages.

## C. STIPULATED FACTS

You are instructed that the parties have agreed or stipulated to the following list of facts. This means both sides agree that this is a fact. You must therefore treat these facts as having been proved.

1.   MEP and TCN are competitors that sell educational materials.

2.   Moore is the sole shareholder and owner of MEP.

3.   MEP and Moore are private parties.

4.   MEP does business as iStudySmart.

5.   MEP owns the website istudysmart.com.

6.   TCN purchased the internet search keywords "istudysmart," "i study smart," and "study smart" from Google and Yahoo!

7.   TCN owns the website www.college-net.com.

8.   iStudySmart is not affiliated with nor related to TCN.

9.   Glenn Cason is employed by TCN as the National Sales Manager.

10.   Joel Kimzey is employed by TCN as Regional Director.

11.   MEP purchased the internet search keywords "The College Network," "College Network," "college network" from Google and Yahoo!

12.   Shara Wright is employed by MEP as National Sales Executive.

## D. TRADEMARK

A trademark is any word, name, symbol, or device, or any combination thereof used by a company to identify and distinguish its goods from the goods of others, and to indicate the source of the goods, even if that source is unknown.

Any person who uses the trademark of another may be liable for damages.

**E. TRADE NAME**

A trade name is any word or words, a symbol, or combination of words and symbol, used by a person to identify that person's business and to distinguish it from the business of others. A trade name symbolizes the reputation of a person's business as a whole. By comparison, a trademark identifies a person's goods.

If a person owns a trade name, then that person has the exclusive right to use the name or to control the use of confusingly similar variations of the name by others in the market.

Any person who uses the trade name of another may be liable for damages.

## F. INFRINGEMENT

On TCN's claim for unfair competition by infringement of its trademark and trade name, TCN has the burden of proving each of the following elements by a preponderance of the evidence:

1.    "The College Network" is a valid, protectable trademark or trade name or both.

2.    TCN owns "The College Network" as a trademark or trade name or both.

3.    MEP's use of a mark or name similar to "The College Network" without the consent of TCN in a manner that is likely to cause confusion among ordinary consumers.

4.    TCN was damaged by MEP's infringement.

If you find that each of the elements on which TCN has the burden of proof has been proved, your verdict should be for TCN.  If, on the other hand, TCN has failed to prove any of these elements, your verdict should be for MEP.

21

## G. VALIDITY OF TRADEMARK OR TRADE NAME

A valid trademark or trade name is a word, symbol, or device that is either: (1) inherently distinctive or (2) descriptive, but has acquired a secondary meaning.

Only a valid trademark or trade name can be infringed. Only if you determine TCN proved by a preponderance of the evidence that "The College Network" is a valid trademark or trade name you should consider whether TCN owns it or whether MEP's actions infringed it.

Only if you determine that "The College Network" is not inherently distinctive should you consider whether it is descriptive but became distinctive through the development of secondary meaning.

An inherently distinctive trademark or trade name is a word, symbol or device, or combination of them, which intrinsically identifies a particular source of a good in the market, in the case of a trademark, or a particular business, in the case of a trade name. The law assumes that an inherently distinctive trademark is one that almost automatically tells a consumer that it refers to a brand or a source for a product, and that consumers will be predisposed to equate the trademark with the source of a product. Likewise, an inherently distinctive trade name is one that almost automatically tells a consumer that it refers to a specific business.

Trademarks and trade names are classified into the following categories: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful.

A trademark or trade dress is "inherently distinctive" if it is classified into one of the last three categories – suggestive, arbitrary, or fanciful. Thus, if a trademark or trade name is classified into one of these three categories, it is protectable, and nothing else is required to show that it is protectable, because its intrinsic nature serves to identify a particular source of a product.

Arbitrary and fanciful marks or trade names bear no relationship to the product or services to which they are applied. A suggestive mark or trade name suggests, rather than describes, some particular characteristic of the goods to which it applies and requires the consumer to exercise the imagination in order to draw a conclusion as to the nature of the goods and services.

For instance, the common word "apple" became a strong and inherently distinctive trademark when used by a company to identify the personal computers that the company sold. The company's use of the word "apple" was arbitrary or fanciful because "apple" did not describe and was not related to what the computer was, its components, ingredients, quality or characteristics. "Apple" was being used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.

A suggestive use of a word involves consumers associating the qualities the word suggests to the product or service to which the word is attached. For example, when "apple" is used not to indicate a certain company's computers, but rather "Apple-A-Day" vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, consumers may come to associate the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" Vitamins.

By contrast, a mark or trade name is descriptive if it identifies a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients. A descriptive mark or trade name is protectable only when it has acquired secondary meaning in the minds of the consuming public. A generic mark or trade dress is never protectable because it connotes a particular genus or class of which an individual product is but a member, rather than the more individualized characteristics of a particular product.

23

Finally, if a mark or name merely answers the question "what is the product being sold?" it is generic. Generic trademarks give the general name of the product. They are part of our common language which we need to identify all such similar products. They are the common name for the product to which they are affixed. If the average consumer would identify the term with all such similar products, regardless of the seller, the term is generic and not entitled to protection as a trademark. Clearly, the word apple can be used in a generic way and not be entitled to any trademark protection when it is used to identify the fleshy, red fruit from an apple tree.

### 1. Mark Distinctiveness and Validity

If you decide that "The College Network" is arbitrary or suggestive, it is considered to be inherently distinctive. An inherently distinctive trademark is valid and protectable.

On the other hand, if you determine that "The College Network" is generic, it cannot be distinctive and therefore is not valid nor protectable. You must render a verdict for MEP on the claim of infringement.

If you decide that "The College Network" is descriptive, you will not know if the trademark is valid or invalid until you consider if it has gained distinctiveness by the acquisition of secondary meaning, which I explain in section H.

24

## H. DESCRIPTIVE BUT BECAME DISTINCTIVE THROUGH THE DEVELOPMENT OF SECONDARY MEANING

Only if you determine that "The College Network" is not inherently distinctive should you consider whether it is descriptive but became distinctive through the development of secondary meaning.

Secondary meaning is established for a trademark or trade name if the mark or name has come through use to be uniquely associated with a specific source. That a particular mark or trade name has acquired secondary meaning can be proven by a consideration of the evidence, including but not limited to the following:

1. Purchaser Perception: Whether people who purchase TCN's products associate TCN's trademark or trade name or both with TCN;

2. Advertisement by the Owner: The amount and manner of advertising by TCN using its trademarks or trade names or both;

3. Demonstrated Utility: Whether TCN used its trademarks or trade name or both to increase its sales;

4. Extent of Use: The length of time and manner in which TCN used its trademarks or trade names or both.

5. Copying: Whether MEP intentionally copied or used TCN's trademarks or trade names or both.

6. Intent: Whether MEP used TCN's trademarks or trade names or both in a manner calculated to capture initial consumer attention.

Descriptive marks are protectable only to the extent you find they acquired distinctiveness through secondary meaning. Descriptive marks are entitled to protection only as broad as the secondary meaning they have acquired, if any. If they have acquired no secondary meaning, they are entitled to no protection and cannot be considered a valid mark.

TCN has the burden of proving that "The College Network" has acquired a secondary meaning.

The mere fact that TCN is using "The College Network" or that TCN began using it before MEP, does not mean that the trademark has acquired secondary meaning. There is no particular length of time that a trademark must be used before it acquires a secondary meaning.

## I. RIGHT TO EXCLUDE OTHERS FROM USING A TRADEMARK OR A TRADE NAME BY BEING THE FIRST TO USE IT IN THE MARKETPLACE.

The law entitles the owner of a trademark or a trade name to exclude others from using that mark and that name.

A person acquires the right to exclude others from using a trademark or a trade name by being the first to use it in the marketplace.

If you find "The College Network" to be inherently distinctive, you must consider whether TCN used them before MEP began to use them for Internet advertising. If you find that TCN has not shown that MEP used a trademark or trade name found by you to be inherently distinctive before MEP began using it or them in its Internet advertising, then you cannot conclude that TCN is the owner of any such trademark or trade name.

If you find that "The College Network" are not inherently distinctive, but that TCN has shown that one or both are descriptive and have acquired secondary meaning, then you must consider whether any such trademark or trade name acquired secondary meaning before MEP began using it or them in its Internet advertising. If you find that TCN has not shown that MEP used such a trademark or trade name before it acquired secondary meaning, then you cannot conclude that TCN is the owner of any such trademark or trade name.

## J. LIKELIHOOD OF CONFUSION

If you determine that TCN owns "The College Network" and that it is a valid, protectable trademark or trade name, then, you must consider whether MEP used it without the consent of TCN in a manner that is likely to cause confusion among ordinary consumers.

A likelihood of confusion may exist if there is what is known as "initial interest confusion," which occurs when a competitor uses a trademark or trade name of another in a manner calculated to capture initial consumer attention. Once the consumer's attention is captured, the consumer may realize that he or she has arrived at the competitor's website, and not the website of the owner of the trademark or trade name, but yet might stay there and purchase the competitor's products.

In considering whether there is a likelihood of confusion, you may consider the following factors.

1. The similarity between TCN's trademark or trade name and the marks and or names used by MEP about which TCN complains;

2. The similarity of TCN's and MEP's products. The greater the similarity of products, the greater the likelihood of confusion.

3. The marketing channels used. The greater the overlap in the advertising methods employed by TCN and MEP, the greater the likelihood of confusion.

4. MEP's Intent. Knowing use by MEP of the TCN's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of TCN's mark, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that MEP acted knowingly, the use of TCN's trademark to identify similar goods may indicate a likelihood of confusion.

5. The strength of the mark or name. The stronger the mark or name, the greater the protection it receives because the greater the likelihood that consumers will confuse

MEP's use with TCN's. In determining the strength of the mark, you should look to such factors as length of time in which the mark or name have been in the marketplace and the extent to which they have been advertised or used.

6.    Any actual confusion that occurred.

7.    The degree of care employed by and the sophistication of consumers.

Proof of actual confusion is not a prerequisite to a finding of likelihood of confusion. No single factor is dispositive, and a finding of a likelihood of confusion does not require a positive finding on a majority of these factors. You may also consider any other factors you find to be relevant to whether there is a likelihood of confusion.

## K. DEFAMATION

Defamation is the act of injuring a person's reputation by making a false statement. A defamatory statement can be made by slander. "Slander" is a false statement, orally communicated or published to a third person, that tends to injure a person's reputation or impeach any person's honesty, integrity, virtue or reputation thereby exposing that person to public hatred, contempt, ridicule, or financial injury.

A statement is not false if it is literally true or substantially true. "Substantially true" means that the statement does not have to be true in every particular. A statement is substantially true if it is no more damaging to the person's reputation in the mind of the average person than a truthful statement would have been.

Whether a statement is defamatory in nature depends on whether a person of ordinary intelligence would perceive the statement to affect the reputation of the MEP or Moore, in light of the surrounding circumstances. A "person of ordinary intelligence" is one who exercises care and prudence, but not omniscience, when evaluating allegedly defamatory communications. The subjective opinion of the parties to the defamation action has no bearing on whether the statement is actually defamatory. The surrounding circumstances are the setting in which the alleged slanderous statement is spoken, consisting of the context of the statement and the common meaning attached to it.

"Publication" is a negligent or intentional act that communicates a defamatory statement to a person other than the person defamed. Negligent publication occurs when a reasonable person would recognize that his actions will create an unreasonable risk that a defamatory statement will be communicated to a third party. If TCN's conduct in publishing a defamatory statement is not intentional, but meets the standard just described for negligent publication, TCN will be liable for defamation in the same way as if TCN had intentionally published a defamatory statement. A statement need not be widely

30

disseminated to achieve publication. Publication is achieved if only one person hears and understands

the defamatory nature of the communication.

## L. ACTUAL MALICE

A defamatory statement is made with actual malice if it is made with actual knowledge that it is false or with reckless disregard as to its truth or falsity.

"Reckless disregard as to its truth or falsity" means a high degree of awareness of probable falsity, to an extent that the person publishing the statement entertained serious doubts as to the truth of the publication.

"Malice" means a specific intent by TCN to cause substantial injury to MEP or Moore, or an act or omission which when viewed objectively from the standpoint of TCN at the time of its occurrence involves an extreme degree of risk, considering that probability and magnitude of the potential harm to others, and of which TCN has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

32

## M. DEFAMATION *PER SE*

A statement is defamatory *per se* if it accuses a person of a crime or of conduct that affects a person injuriously in its business, occupation, or office.

In deciding whether a statement is defamatory *per se*, you are to consider a reasonable person's perception of the statement in light of the surrounding circumstances and based on how a person of ordinary intelligence would understand it.

Falsely accusing someone of stealing or calling someone a "thief" constitutes defamation *per se*.

## N. TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

Wrongful interference occurred if:

1. There was a reasonable probability that MEP would have entered into a business relationship;

2. TCN intentionally intervened or TCN performed an independently tortious or unlawful act with a conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially likely to occur as a result of its conduct;

3. TCN lacked a privilege or justification for TCN's actions; and

4. actual harm or damages suffered by MEP as a result of TCN's interference, i.e., that the TCN's actions prevented the relationship from occurring.

Conduct that is merely sharp or unfair is not actionable.

34

## III.  DAMAGES

### A. GENERAL INSTRUCTIONS ON DAMAGES

If TCN or MEP or Moore has proved any of its claims by a preponderance of the evidence, you must determine the damages to which the respective party entitled, if any.  Should you reach these questions, I am giving you general instructions to aid you in determining damages.  You should not interpret the fact that I have given you instructions about damages as an indication in any way that I believe that any party should, or should not, win this case.  It is your task first to decide whether TCN or MEP or Moore is liable.  I am instructing you on damages only so that you will have guidance in the event you decide that any of the parties is liable, and that any party is entitled to recover money from the opposing party.

In answering questions about damages, answer each question separately.  Do not increase or reduce the amount in one answer because of your answer to any other question about damages.  Do not speculate about what any party's ultimate recovery may or may not be.  Any recovery will be determined by the Court when it applies the law to your answers at the time of judgment.  Do not add any amount for interest on damages, if any.

## B. COMPENSATORY DAMAGES

If you find that any of the parties are liable, then you must determine an amount that is fair compensation for all of a party's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make a party whole–that is, to compensate a party for the damage, if any, that the party has suffered.

You may award compensatory damages only for injuries that each party proves were proximately caused by another party's allegedly wrongful conduct. The damages that you award must be fair compensation for all of a party's damages, no more and no less. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize a party. You should not award compensatory damages for speculative injuries, but only for those injuries each party has actually suffered or that a party is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that a party prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the Court when it applies the law to your answers at the time of judgment.

## C. EXEMPLARY DAMAGES

"Exemplary damages" means an amount that you may in your discretion award as an example to others and as a penalty or by way of punishment, in addition to any amount that you may have found as actual damages.

Factors to consider in awarding exemplary damages, if any, are:

1. The nature of the wrong.

2. The character of the conduct involved

3. The degree of culpability of TCN.

4. The situation and sensibilities of the parties concerned.

5. The extent to which such conduct offends a public sense of justice and propriety.

## IV. CLOSING INSTRUCTIONS

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently or merely to finish the case.

Do not let bias, prejudice, or sympathy play any part in your deliberations. Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case. If there is publicity about this trial, you must ignore it. Do not read anything or listen to any TV or radio programs about the case.

This concludes my instructions on the law in this case. You will now hear the attorneys' closing arguments. You will then retire to the jury room to deliberate on your verdict. You may take this charge with you as well as any exhibits which the Court has admitted into evidence. You should first select a Presiding Juror (or Foreman) and then begin your deliberations. If you recess during your deliberations, you must follow the instructions the Court has previously given concerning your conduct during the trial. Your duty is to fill in the form answering the jury questions to reflect your unanimous verdict. Your Presiding Juror must then sign the form. Unless I direct you otherwise, do not reveal your answers until such time as you are discharged. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or

by meeting with you in the courtroom.  I will always first show the attorneys your question and my

response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless

I order you to do so.

Submitted the *24th* day of January, 2009, at *12:47* o'clock *p* .m.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE